# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

MARQESE LYNN PAYNE,          )
                                      )

                 Petitioner,       )
                                      )

v.                              )       **Case No. 17-CV-0151-JHP-FHM**
                                      )

JANET DOWLING,            )
                                      )

                Respondent.    )

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1) filed by Petitioner Marqese Lynn Payne, a state inmate appearing *pro se*.[1] Petitioner challenges the judgment and sentence entered against him in Tulsa County District Court Case No. CF-2015-5265. In that case, Petitioner entered blind guilty pleas to four charges: first degree arson (Count 2), possession of a firearm (Count 3), and second degree burglary (Count 4), all after former conviction of two or more felonies, and reckless conduct with firearms, a misdemeanor (Count 5).[2] The state district court accepted Petitioner's guilty pleas and imposed prison sentences of twenty years (Count 2), three years (Count 3), seven years (Count 4), and six months (Count 5), with all sentences to be served concurrently.

Petitioner alleges he is entitled to federal habeas relief because (1) his guilty pleas were not knowing, intelligent and voluntary and (2) he was denied effective assistance of counsel. Dkt. # 1

---

[1]     Because Petitioner appears *pro se*, the Court liberally construes his pleadings but stops short of advocating on his behalf. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[2]     Petitioner also pleaded guilty to a fifth charge, attempted first degree burglary (Count 1), but the State dismissed that charge before Petitioner was formally sentenced. Dkt. # 10 at 1 n.1; Dkt. # 11-7, Plea Withdrawal Hr'g Tr. (Mar. 24, 2016), at 33.

at 7, 10, 12. Respondent filed a response to the petition (Dkt. # 10), and provided the state court records necessary to adjudicate Petitioner's claims (Dkt. ## 10, 11). Petitioner filed a reply (Dkt. # 16). For the reasons discussed below, the Court denies the habeas petition. As a result, the Court declares moot Petitioner's pending motion for miscellaneous relief (Dkt. # 19).[3]

## *BACKGROUND*

On September 27, 2015, Petitioner broke into an apartment adjoining the apartment occupied by the mother of his children. Dkt. # 11-4, Plea Hr'g Tr., at 40; Dkt. # 11-8, O.R., at 26-27 (Arrest Report).[4] He then gained access to her apartment by breaking through the adjoining wall. *Id.* At some point, he set fire to a mattress in the adjoining apartment. *Id.* Petitioner also brandished a firearm, which he possessed unlawfully due to a prior felony conviction. Dkt. # 11-4, Plea Hr'g Tr., at 40. The State ultimately charged Petitioner, in Tulsa County District Court Case No. CF-2015-5265, with four felonies: first degree burglary (Count 1), first degree arson (Count 2), possession of a firearm (Count 3), and second degree burglary (Count 4), all after former conviction of two felonies. Dkt. # 11-8, O.R., at 44-47 (Second Amended Information, dated Jan. 12, 2016). The State also charged him with one misdemeanor: reckless conduct with a firearm (Count 5). *Id.* at 45. On November 5, 2015, the State charged Petitioner, in Tulsa County District Court Case No. CF-2015-5896, with one count of assault and battery on a detention officer. Dkt. # 10 at 3 n.3.[5]

---

[3]    In his motion, filed June 14, 2018, Petitioner requests an expedited decision on his petition, an evidentiary hearing and appointment of counsel. Dkt. # 19.

[4]    "O.R." refers to the original record from state court. For clarity, the Court's record citations refer to the CM/ECF header page number in the upper right-hand corner of each document.

[5]    Petitioner does not challenge his conviction or sentence in Case No. CF-2015-5896. *See* Dkt. # 1, generally; Dkt. # 10 at 3 n.3. The Court discusses this case only as background information.

Before trial, Petitioner, represented by Benjamin Wass, twice rejected plea offers from the State that would have disposed of all charges in both cases in exchange for a 10-year prison sentence. Dkt. # 11-1, Dist. Ct. Arr. Hr'g Tr., 1-8; Dkt. # 11-3, Plea Offer Hr'g Tr., at 1-6. On the first day of trial, Wass sought a continuance, citing Petitioner's request for "more time to look into an insanity defense" and to obtain a mental health evaluation. Dkt. # 11-4, Plea Hr'g Tr, at 4-5. The state district court denied the continuance. *Id.* Following discussion of discovery issues, jury selection procedures, and potential stipulations, Wass informed the court Petitioner wanted to enter a blind plea of guilty as to all five charges in Case No. CF-2015-5265. *Id.* at 5-34. The court asked Petitioner if Wass had explained the meaning of a blind plea.[6] *Id.* at 34. Petitioner replied, "something, yes." *Id.* The court then explained to Petitioner, "[he] would plead guilty to the[] charges and then whatever the range of punishment is, the [c]ourt would review a presentence investigation, listen to argument from both sides, and make a determination as to punishment." *Id.* Petitioner verbalized his understanding of a blind plea. After the court confirmed Petitioner's choice was to plead guilty, the court ordered a brief recess so Wass and Petitioner could complete a guilty plea form.[7] *Id.* at 35.

---

[6] A "blind" plea "is a plea in which there is no binding agreement on sentencing, and punishment is left to the judge's discretion." *Medlock v. State*, 887 P.2d 1333, 1337 n.2 (Okla. Crim. App. 1994).

[7] In *Crofford v. Rudek*, 420 F. App'x 806, 808 (10th Cir. 2011), the Tenth Circuit Court of Appeals explained:
In Oklahoma every guilty plea must be accompanied by a form detailing the particulars. *See* Rule 4.1 of the Rules of the Oklahoma Court of Criminal Appeals. The mandatory form includes, among other things: statement of facts summarizing what the defendant did; questions regarding the defendant's understanding of the range of punishments for the crimes pleaded guilty to; and questions regarding whether the defendant entered the guilty on his own free will without coercion and compulsion.

When the hearing resumed, the court placed Petitioner under oath, conducted a plea colloquy with Petitioner, found Petitioner competent to enter his guilty pleas, accepted his guilty pleas as knowing, voluntary, and supported by a factual basis, and set the matter for sentencing on February 22, 2016. Dkt. # 11-4, Plea Hr'g Tr., at 35-42. Following another recess, Petitioner entered a guilty plea as to the assault and battery charge in Case No. CF-2015-5986 in exchange for the State's agreement to recommend a sentence of time served. *Id.* at 42-43. The court found Petitioner's guilty plea in that case was knowing and voluntary and set the matter for sentencing on February 22, 2016. *Id.* at 43.

On January 27, 2016, Petitioner filed a *pro se* motion to withdraw his pleas in Case No. CF-2015-5265. Dkt. # 11-8, O.R., at 53 (Motion to Withdraw Plea). He alleged he entered the blind plea without "knowledge and information" that he was admitting his guilt by signing the plea form. *Id.* He further alleged he thought his "charges would be amended down and he would be released" if he entered the blind plea. *Id.* Finally, he alleged he had "no discussion" with Wass about a plea before he signed the plea form. *Id.* Based on this last allegation, Petitioner stated Wass should withdraw from the case. *Id.* With his motion, Petitioner submitted a "Notice" advising the court he would not have signed the plea form or pleaded guilty if he "had proper counsel." *Id.* at 54.

Following a brief hearing on February 22, 2016, the state district court appointed Brian Martin to represent Petitioner on his motion to withdraw the pleas and continued the hearing to March 21, 2016. Dkt. # 11-5, Plea Withdrawal Hr'g Tr. (Feb. 22, 2016), at 1-7; Dkt. # 11-6, Plea Withdrawal Hr'g Tr. (Mar. 21, 2016), at 1-4. During the second hearing, Petitioner testified he met with Wass at the jail only twice before he entered his guilty pleas. Dkt. # 11-6 at 6-8. According to Petitioner, Wass gave him an incomplete packet of discovery materials on the first visit and

"tr[ied] to force [him] to take some time" on the second visit. *Id.* at 7-8. Petitioner testified he told Wass he "wasn't in [his] right state of mind." *Id.* at 8. According to Petitioner, Wass said he would "try to go for mental health court" and obtain a psychological evaluation. *Id.* Petitioner testified Wass did not apply for mental health court or obtain an evaluation. *Id.* at 8-9. Petitioner further testified he and Wass did not discuss trial strategy or the strengths and weaknesses of his case. *Id.* at 10. Rather, according to Petitioner, Wass only tried to "force" him to "take" the State's offer and plead guilty. *Id.*

Petitioner testified he and Wass discussed "entering a blind plea" on the first day of trial. Dkt. # 11-6 at 11. Based on that discussion, Petitioner believed that if he took the blind plea he would get into mental health court and "get some type of probation." *Id.* Petitioner testified Wass completed the plea form and told Petitioner to sign it. *Id.* at 11-12. According to Petitioner, he and Wass did not go over every question on the form and Wass did not fully explain the blind plea. *Id.* at 12. Petitioner testified Wass told him his minimum punishment "was just twenty" and Wass could "get [him] ten." *Id.* Petitioner reiterated that when he spoke with Wass about the blind plea, Petitioner understood he would "get applied to mental health court" and get a mental health evaluation. *Id.* at 13. He also testified Wass did not talk to him about probation. *Id.*

On cross-examination, Petitioner testified he lied to the court during the plea hearing when he said he completed the plea form and reviewed it with Wass. Dkt. # 11-6 at 15-16. Petitioner further testified he responded affirmatively to the court's questions during the plea hearing about his understanding of the blind plea only because Wass was shaking his head "yes," and Petitioner "was looking for answers from [Wass]." *Id.* at 16. Petitioner also testified he did not "even know" what was on the plea form and did not remember pleading guilty to the charges. *Id.* at 17. More

specifically, Petitioner testified he did not plead guilty during the plea hearing. *Id.* at 18. When asked if he had ever entered guilty pleas to charges in other cases, Petitioner testified he generally "pled no contest" in his prior cases. *Id.* at 19-21. Finally, he testified he "didn't bother to read through [the plea form] to see what [he] was pleading guilty to" before he signed it. *Id.* at 22. After Petitioner testified, the prosecutor sought a continuance so all parties could obtain copies of the plea hearing transcript and so Wass, who had been involved in an automobile accident on the morning of the hearing, could testify. *Id.* at 23-24. The court granted the continuance over Petitioner's objection. *Id.* at 24-25.

During the third hearing, the prosecutor asked the court to take judicial notice of the plea hearing transcript and rested without presenting any witnesses. Dkt. # 11-7, Plea Withdrawal Hr'g Tr. (Mar. 24, 2016), at 4-5. After hearing arguments from both parties, the court pointed out that the plea hearing transcript did not address Petitioner's claim that Wass forced him to plead guilty. *Id.* at 5-8. Citing the need to further develop the record, the court asked the prosecutor to call Wass as a witness. *Id.* at 8-9. Wass testified he met with Petitioner "several times" before the first day of trial. *Id.* at 11-14. According to Wass, he and Petitioner discussed (1) the State's initial plea offer, (2) the State's evidence, (3) potential defenses, and (4) the consequences of either going to trial or entering a plea. *Id.* at 12-15. Wass also testified he and Petitioner discussed sentencing issues including Petitioner's prior convictions and the fact that some charges were 85% crimes. *Id.* at 14-15. In Wass' view, Petitioner "had a fairly comprehensive understanding of what was going on" before he decided to plead guilty. *Id.* at 14, 17. Based on his multiple conversations with Petitioner, Wass opined Petitioner "understood the topics of [their] conversation[s]" even if he "may not have liked what [Wass] was telling him." *Id.* at 15-16.

Wass denied discussing mental health court with Petitioner in the context of the blind plea conversation. Dkt. # 11-7 at 17. Wass testified he and Petitioner discussed the possibility of raising mental health issues at sentencing should Petitioner enter a blind plea. *Id.* at 17-18. According to Wass, "there was never any indication at all that [Petitioner] would get into mental health court." *Id.* at 17. Wass also testified he believed he had applied for mental health court some time "previous to the blind plea," but Petitioner's application had been denied. *Id.* at 18. Wass testified he filled out the plea form and went over each question on the form "one by one" with Petitioner. *Id.* at 19. According to Wass, Petitioner appeared to understand (1) the plea form as they were filling it out and (2) the questions posed to him by the court during the plea hearing. *Id.* at 19-21. Wass denied making any promises to Petitioner in exchange for signing the plea form and denied threatening or coercing him to sign the form. *Id.* at 20. On cross-examination, Wass testified he could not specifically recall whether he actually applied for mental health court or whether he and Petitioner merely discussed applying. *Id.* at 23. Wass reiterated, however, that he "never talked to [Petitioner] about getting mental health court after he entered his plea." *Id.* at 24.

The court denied Petitioner's motion to withdraw his guilty pleas. Dkt. # 11-7 at 28. In light of the plea hearing transcript, the court did not find Petitioner's testimony "very credible at all." *Id.* at 27. The court did find Wass' testimony credible. *Id.* Based on its review of the plea hearing transcript and its independent recollection of that hearing, the court found Petitioner's guilty pleas were knowing and voluntary and Petitioner understood the court's questions during the plea hearing. *Id.* at 28.

After the court denied Petitioner's motion, it proceeded with sentencing. Martin acknowledged Petitioner had two prior felony convictions, but urged the court to impose a split

sentence of 10 years in prison and 11 years of probation. Dkt. # 11-7 at 29-31. The prosecutor argued Petitioner was not eligible for a split sentence, discussed the facts of the case, and urged the court to impose the minimum sentence. *Id.* at 31-32. Before imposing sentence, the court addressed Martin's prior argument that Petitioner had been charged in Count 1 with first degree burglary but had apparently pleaded guilty to attempted first degree burglary. *Id.* at 25-26, 32-33. After reviewing the plea form and the plea hearing transcript, the court found Petitioner pleaded guilty to attempted first degree burglary and stated he would sentence Petitioner accordingly. *Id.* at 33. The prosecutor then moved to dismiss Count 1, and the court granted the motion. *Id.* The court imposed the following prison sentences and fines: 20 years and $25,000 fine (Count 2), three years and no fine (Count 3), seven years and no fine (Count 4), and 6 months and $500 fine (Count 5). *Id.* at 33-34. The court ordered all sentences to be served concurrently and gave Petitioner credit for time served. *Id.* at 34. The court advised Petitioner of his appeal rights, and Petitioner advised the court of his intent to appeal. *Id.* at 34-36.

Petitioner timely filed a petition for writ of certiorari in the Oklahoma Court of Criminal Appeals (OCCA), Case No. C-2016-235, raising four propositions of error:

1.    The trial court abused its discretion in denying Petitioner's motion to withdraw his plea on a record that fails to show the plea was entered knowingly, intelligently, and voluntarily, in violation of due process under the United States and Oklahoma Constitutions, as Petitioner believed he would receive a sentence of probation or to mental health court;

2.    The trial court abused its discretion in denying Petitioner's motion to withdraw his plea on a record that fails to show the plea was entered knowingly, intelligently, and voluntarily, in violation of due process under the United States and Oklahoma Constitutions;

3.    Petitioner was denied the effective assistance of plea counsel to which he was entitled under the 6th and 14th Amendments to the United States Constitution and Art. II, §§ 7 and 20 of the Oklahoma Constitution;

4.      Petitioner was denied the effective assistance of counsel at the withdrawal of plea hearing to which he was entitled under the 6th and 14th Amendments to the United States Constitution and Art. II, §§ 7 and 20 of the Oklahoma Constitution.

Dkt. # 10-5, *Payne v. State*, No. C-2016-235 (Okla. Crim. App.) (unpublished) (hereafter, "OCCA Op."), at 2; *see also* Dkt. # 10-4, Pet'r Cert. App. Br., at 2-3. By unpublished summary opinion filed January 11, 2017, the OCCA denied the writ of certiorari but modified Petitioner's fine in Count 2 to $10,000. Dkt. # 10-5, OCCA Op., at 3-4.

Petitioner filed the instant habeas petition on March 22, 2017. Dkt. # 1. He alleges he is entitled to habeas relief on three grounds: (1) his guilty pleas were "involuntary because [he] mistakenly believed he would receive mental health court or probation," (2) his guilty pleas were not knowing, intelligent and voluntary for additional reasons, and (3) he received ineffective assistance of counsel during plea negotiations, plea withdrawal hearings, and sentencing. Dkt. # 1 at 7, 10, 12; Dkt. 10-4, Pet'r App. Br., at 16-42.[8]

Respondent contends 28 U.S.C. § 2254(d) bars Petitioner from obtaining federal habeas relief on these claims. Dkt. # 10 at 12-31.

## *DISCUSSION*

Because Petitioner is a state prisoner, the Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of his habeas claims. *See* 28 U.S.C. § 2254. Under the AEDPA, a federal court may grant habeas relief to a state prisoner "only on the ground that [the

---

[8]      Petitioner's three habeas claims mirror the four propositions of error Petitioner raised in his certiorari appeal. Dkt. # 10-5, OCCA Op., at 2. Petitioner includes with his petition a copy of his state appellate brief and refers the Court to specific pages therein for facts and arguments supporting each habeas claim. *See* Dkt. # 1 at 7, 10, 12, 28-69. Given Petitioner's *pro se* status, the Court will consider his state appellate brief in construing his habeas claims. However, for ease of discussion, the Court will cite to the copy of Petitioner's state appellate brief submitted by Respondent (Dkt. # 10-4).

prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2254(a). In addition, before a federal court may grant habeas relief, a state prisoner must exhaust available state-court remedies, *id.* § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim[s] to state courts," *Hawkins v. Mullins*, 291 F.3d 658, 668 (10th Cir. 2002). In most cases, the prisoner must file a federal habeas petition within one year of the date on which his convictions became final. *See* 28 U.S.C. § 2244(d)(1).

Respondent concedes, and the Court finds, Petitioner exhausted his habeas claims by presenting them to the OCCA in his certiorari appeal and Petitioner timely filed his habeas petition. Dkt. # 10 at 2. Respondent contends, however, that § 2254(d) bars Petitioner from obtaining habeas relief on these claims. *Id.* at 12-31.

Under § 2254(d)), when a state court adjudicates the merits of a state prisoner's federal claims, a federal court may not grant habeas relief on those claims unless the prisoner demonstrates the state court's adjudication of those claims either (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States," *id.* § 2254(d)(1); (2) "resulted in a decision that . . . involved an unreasonable application of clearly established Federal law," *id.*; or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, *id.* § 2254(d)(2). The court must also presume the correctness of the state court's factual findings unless the prisoner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The standards set forth in § 2254 are "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and require federal habeas courts to give state court decisions the "benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Thus, before a state prisoner can obtain federal

habeas relief the prisoner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

## I.     Due process claims (Grounds 1 and 2)

Petitioner claims his convictions were obtained in violation of his constitutional right to due process because his guilty pleas were not knowing, intelligent and voluntary.   In Ground 1, he alleges his guilty pleas were "involuntary because [he] mistakenly believed he would receive mental health court or probation" and neither plea counsel nor the trial court explained the meaning of a blind plea.   Dkt. # 1 at 7; Dkt. # 10-4, Pet'r App. Br., at 16-22.   In Ground 2, he alleges his pleas were not knowing, intelligent or voluntary because (1) he was on medication that affected his ability to understand the proceedings, (2) he believed the State "would dismiss counts or amend page 2 of the Information" in exchange for his blind plea, (3) he did not understand the charges to which he was pleading, (4) he pleaded guilty to an offense not charged in the information, (5) he pleaded guilty to only one prior felony conviction, and (6) "he was misadvised on the sentence ranges for each count."   Dkt. # 1 at 10; Dkt. # 10-4, Pet'r App. Br., at 23-24.[9]

---

[9]     In Grounds 1 and 2, Petitioner also contends the state district court failed to comply with state-approved procedures for accepting a guilty plea as set forth in *King v. State*, 553 P.2d 529, 534-36 (Okla. Crim. App. 1976).   Dkt. # 10-4, Pet'r App. Br., at 16-17, 24-25; *see also* Dkt. # 16 at 2.   However, a challenge to the state district court's compliance with state procedures does not state a cognizable federal habeas claim.   *See Wilson v. Cocoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.").   Thus, to the extent this contention forms part of the claims alleged in Grounds 1 and 2, the Court denies habeas relief for failure to state a cognizable habeas claim.

A federal court reviewing a guilty plea taken in state court may set aside a guilty plea only if it fails to satisfy due process. *Cunningham v. Diesslin*, 92 F.3d 1054, 1060 (10th Cir. 1996). To satisfy due process, a guilty plea must be knowing, intelligent, and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *see also Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (noting that a plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant" (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970))). To be a knowing and intelligent plea, "[t]he defendant need not understand every collateral consequence of the plea, but need only understand its direct consequences." *United States v. Hurlich*, 293 F.3d 1223, 1230 (10th Cir. 2002). This means, at a minimum, the defendant must understand the nature of the charges against him, the possible penalties, including the maximum penalty that may be imposed, and constitutional rights he is waiving by entering a plea. *Brady v. United States*, 397 U.S. 742, 756-57 (1970); *Boykin*, 395 U.S. at 242-44; *Worthen v. Meachum*, 842 F.2d 1179, 1182 (10th Cir. 1988), *overruled on other grounds by Coleman v. Thompson*, 501 U.S. 722 (1991). To be voluntary, the decision to plead guilty must be the defendant's decision. *See Fields v. Gibson*, 277 F.3d 1203, 1213 (10th Cir. 2002) (explaining that a plea may be involuntary if counsel "materially misinforms the defendant of the consequences of the plea" (quoting *United States v. Rhodes*, 913 F.2d 839, 843 (10th Cir. 1990))); *United States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir. 1988) ("[C]oercion by the accused's counsel can render a plea involuntary."). "Whether a plea is voluntary is a question of federal law, but this legal conclusion rest on factual findings and inferences from those findings." *Fields*, 277 F.3d at 1212.

In rejecting Petitioner's due process claims, the OCCA noted its "review of a guilty plea is limited to whether the plea was made knowingly and voluntarily, and whether the court had

jurisdiction to accept it." Dkt. # 10-5, OCCA Op., at 2 (citing *Cox v. State*, 152 P.3d 244, 247 (Okla. Crim. App. 2006), *overruled on other grounds by State v. Vincent*, 371 P.3d 1127, 1130 (Okla. Crim. App. 2016)). As to his Ground 1 claim, the OCCA found, based on the record, "the trial court clearly explained that sentencing would be determined by the court after a pre-sentencing investigation." *Id.* at 2-3. Citing Wass' testimony, the OCCA further found, "Petitioner indicated he understood the blind plea and was not led to believe he would be sentenced to mental health court or probation." *Id.* at 3. As to his Ground 2 claim, the OCCA found "the trial court properly determined that Petitioner was competent to waive his rights and plead guilty." *Id.* The OCCA further found "[t]he errors identified by appellate counsel in the plea of guilty form do not show that Petitioner misunderstood the blind plea or actually believed he was being sentenced after only one (1) prior conviction." *Id.* The OCCA also found that Petitioner failed to establish the alleged errors in the plea form "would have affected his decision to plead guilty." *Id.* On this last point, the OCCA reasoned:

> Petitioner suffered no prejudice from being told that the punishment for first degree burglary was twenty-one (21) years to life imprisonment, rather than the correct range of twenty (20) years to life imprisonment. The State dismissed Count 1 before sentencing. Nor has he suffered prejudice from incorrect advice on the plea form that the range of punishment for Count 3, possession of a firearm, was three (3) to twenty (20) years, when it was in fact two (2) years to life. Petitioner has shown no reasonable probability that these errors would have changed his decision to plead blind.

Dkt. # 10-5, OCCA Op., at 3 n.2.

Petitioner generally contends the OCCA's decision "is contrary to clearly established Federal law, as determined by the Supreme Court, because [the decision] decided petitioner's case differently than [the Supreme Court] had done on a set of materially indistinguishable facts" and "[t]he state court finding is not supported by the record." Dkt. # 1 at 7, 10. As Respondent points

out, Petitioner fails to adequately develop these contentions in his petition. Dkt. # 10 at 14-15, 20. However, liberally construing his state appellate brief and reply brief, the Court finds Petitioner's arguments challenge the factual underpinnings of the OCCA's decision. *See, e.g.*, Dkt. # 10-4, Pet'r App. Br., at 18-19 (citing his own testimony from plea withdrawal hearing as evidence he did not understand consequences of his guilty pleas); *id.* at 22, 26-31 (citing alleged deficiencies in plea form). Petitioner also discusses *Brady* and *Boykin* and appears to argue the OCCA unreasonably applied these decisions to the facts of his case. *See* Dkt. # 10-4, Pet'r App. Br., at 17-22, 25-31; Dkt. # 16 at 2-7.

To establish that the OCCA unreasonably applied clearly established federal law to the facts of his case, Petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Similarly, to establish the OCCA's decision resulted from an unreasonable determination of the facts, Petitioner must do more than show that "reasonable minds reviewing the record might disagree about the finding in question." *Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016) (quoting *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *see also Wood v. Allen*, 558 U.S. 290, 301 (2010) (noting that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance").[10]

---

[10]    In *Brumfield*, the Supreme Court noted that it has "not yet 'defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)." 135 S. Ct. at 2282. However, as further discussed in this Opinion and Order, even without applying § 2254(e)(1)'s presumption of correctness to the OCCA's findings, the Court finds the OCCA's decision is not based on an unreasonable determination of the facts under § 2254(d)(2) because the record amply supports the OCCA's findings.

Having reviewed the state court record, the Court agrees with Respondent that Petitioner cannot demonstrate the OCCA's decision on his due process claims resulted from either an unreasonable application of Supreme Court law or an unreasonable determination of the facts. Dkt. # 10 at 12, 22-23.[11] Significantly, in determining whether a plea is knowing and voluntary, courts may consider answers a defendant has provided on written forms relevant to the plea. *Hoffman v. Young*, 23 F. App'x 885, 887 (10th Cir. 2001) (unpublished).[12] While not conclusive on the question of whether defendant's pleas comport with due process, his in-court statements made under oath during the plea hearing as to the knowing and voluntary nature of his pleas are also accorded a strong presumption of reliability. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (noting that "representations of the defendant . . . at [a plea] hearing as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings").

In Ground 1, Petitioner alleges his pleas were "involuntary" because no one explained to him the concept of a blind plea and he believed he would be sentenced to mental health court or probation in exchange for his guilty pleas. Dkt. # 10-4 at 16-22. The OCCA determined Petitioner "understood the blind plea and was not led to believe he would be sentenced to mental health court or probation." Dkt. # 10-5, OCCA Op., at 3. The record demonstrates the reasonableness of the

---

[11] In addition, by citing its own decision in *Cox*, the OCCA identified the correct legal principle guiding its review of Petitioner's due process claims. Dkt. # 10-5, OCCA Op., at 2; *see Cox*, 152 P.3d at 254-55 (applying *Boykin* to determine whether defendant's plea "was being entered intelligently with an understanding of the nature and consequences of his plea"). Thus, Petitioner cannot demonstrate that the OCCA's decision was "contrary to" clearly established Supreme Court law. *See Williams v. Taylor*, 529 U.S. 362, 406 (2000) (noting that "a run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

[12] The Court cites this decision, and other unpublished decisions herein, as persuasive authority. *See* FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

OCCA's determination. The plea hearing transcript reflects the state district court twice explained to Petitioner that he was entering a blind plea. Dkt. # 11-4 at 34, 39. Each time, Petitioner assured the court he understood the court's explanation of a blind plea. *Id.* Wass testified he and Petitioner discussed the possibility of a blind plea on the first day of trial and that he did not promise Petitioner would get into mental health court during that conversation. Dkt. # 11-7, Plea Withdrawal Hr'g Tr. (Mar. 24, 2016), at 17-24. In contrast, Petitioner testified he believed, based on his conversation with Wass, that he would get into mental health court and "get some type of probation." Dkt. # 11-6, Plea Withdrawal Hr'g Tr. (Mar. 21, 2016), at 11. However, Petitioner also testified Wass did not talk to him about probation. *Id.* at 12. The state district court judge, who heard this conflicting testimony first hand and who presided over the plea hearing, found Petitioner's testimony not "very credible at all." Dkt. # 11-7 at 27. Even under the AEDPA's deferential review standards, a federal court need not "accept[] without question" a state court's credibility determination. *Miller-El v. Cockrell*, 537 U.S. 322, 340-41 (2003). Nonetheless, state court findings are presumed correct absent clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here, the Court finds no evidence in the record to undermine either the state district court's credibility determination or the OCCA's findings that Petitioner understood the concept of a blind plea and was not promised he would be sentenced to mental health court or probation. Moreover, Petitioner's subjective belief regarding the sentence he might receive would be insufficient to render his plea invalid. *See Cunningham*, 92 F.3d at 1061 (10th Cir. 1996) ("A defendant's subjective understanding that he will serve less than one-half of his sentence, if it is not based uopn any promise mayde by the defense attorney, the prosecutor, or the court, will not undermine the constitutionality of the plea."). For these reasons, the Court denies habeas relief as to Ground 1.

In Ground 2, Petitioner alleges his pleas were not knowing, intelligent or voluntary because he was on medication that affected his ability to understand the proceedings and several errors in the plea form prevented him from understanding the consequences of his blind pleas. Dkt. # 1 at 10; Dkt. # 10-4, Pet'r App. Br., at 23-24. In rejecting this due process claim, the OCCA relied, in part, on the state district court's determination that Petitioner was competent to enter his plea. Dkt. # 10-5, OCCA, Op., at 3. The record supports the state district court's finding and, in turn, the OCCA's reliance on that finding. As discussed, Petitioner signed a plea form before pleading guilty. Dkt. # 10-1. As relevant here, he indicated he was taking medications that could affect his ability to understand the proceedings. Dkt. # 10-1 at 1. During the plea hearing, Petitioner advised the court, consistent with his answer on the plea form, that he was taking medications. Dkt. # 11-4, Plea Hr'g Tr., at 36. However, when the court inquired whether he understood the plea proceedings, despite his medications, Petitioner answered in the affirmative. *Id.* Moreover, plea counsel assured the state district court he had no concerns about Petitioner's competency to enter the plea. *Id.* at 36-37. On this record, the OCCA's determination that Petitioner was competent to enter his pleas is reasonable.

Likewise, it was reasonable for the OCCA to determine the errors Petitioner identified in the plea form did not render his pleas invalid. Dkt. # 10-5, OCCA Op., at 3. Notably, by signing the plea form, Petitioner swore he understood the nature and consequences of the plea proceeding, *id.* at 1, he was pleading guilty on Counts 1 through 5, *id.* at 2-3, he understood three of his charges carried a maximum sentence of life, *id.* at 3, and he was pleading guilty "of [his] own free will and without any coercion or compulsion of any kind," *id.* at 5. These answers on the plea form support the OCCA's determination that Petitioner's pleas were knowing and voluntary. However, as

Petitioner points out, the plea form does contain several mistakes. In signing the form, Petitioner swore he was pleading to attempted first degree burglary in Count 1 when the actual charge in that case was first degree burglary. *See id.* at 2, 4; Dkt. # 11-8, O.R., at 44 (Second Amended Information). Petitioner also indicated he understood the State would move to dismiss or amend counts in the information or on page 2 of the information. Dkt. # 10-1 at 1. Underneath that answer, a scribbled out, handwritten notation indicates he believed Count 1 would be dismissed. *Id.* In addition, he indicated he understood he was charged after former conviction of one felony in Case No. CF-09-5882 when the second amended information actually alleged two prior felony convictions. *See* Dkt. # 10-1 at 2,4; Dkt. # 11-8, O.R., at 47. Finally, some sentencing ranges listed on the plea form were incorrect. Dkt. # 10-1 at 1, 3; *see* Dkt. # 10-5, OCCA Op., at 3 n.2.

However, the OCCA acknowledged several of these plea form errors and found Petitioner failed to demonstrate any prejudice therefrom. As the OCCA reasoned, any misunderstandings Petitioner may have had relating to the charge or sentence in Count 1 were rendered immaterial when the state district court (1) agreed with Petitioner that he pleaded guilty to attempted first degree burglary rather than the charged offense of first degree burglary, and (2) granted the State's request to dismiss Count 1 before sentencing. Dkt. # 10-5, OCCA Op., at 3 n.2; *see* Dkt. # 11-7, Plea Withdrawal Hr'g Tr. (Mar. 24, 2016), at 32-33. The OCCA also acknowledged the incorrect sentencing ranges listed in the plea agreement but found Petitioner failed to establish a reasonable probability that, but for these errors, he "would have changed his decision to plead blind." Dkt. # 10-5, OCCA Op., at 3 n.2. Petitioner's own testimony supports this finding as he testified he did not even read the plea form before signing it. Dkt. # 11-6, Plea Withdrawal Hr'g Tr. (Mar. 21, 2016), at 22. Finally, it was reasonable for the OCCA to find Petitioner failed to show that he

"actually believed he was being sentenced after only one (1) prior conviction." Dkt. # 10-5, OCCA Op., at 3. The second amended information alleged two prior felony convictions, Dkt. # 11-8, O.R., at 47, and Petitioner was present at the sentencing hearing when Martin and the state district court discussed the limited sentencing options arising from Petitioner's "two prior felony convictions," Dkt. # 11-7 at 29-30. Moreover, the only source for Petitioner's repeated assertions that he pled guilty to one prior felony conviction is the plea form, the same form Petitioner testified he did not read before signing. Dkt. # 11-6 at 22. Furthermore, Petitioner's additional in-court statements support the OCCA's determination his pleas were knowing and voluntary, despite any plea form errors. Specifically, Petitioner answered "Sir, yes, sir," when the court asked him whether he understood (1) the charges against him, (2) that some charges were 85% crimes, (3) each question on the plea form, (4) the potential minimum and maximum sentences, (5) the meaning of the blind plea, and (6) he was waiving his constitutional right to a jury trial. Dkt. # 11-4, Plea Hr'g Tr., at 37-39. As discussed, Petitioner's later testimony, at the plea withdrawal hearing, that his answers to the court during the plea hearing were based on lies was found to be not "very credible at all," Dkt. # 11-7, Plea Withdrawal Hr'g Tr. (Mar. 24, 2016), at 27, and Petitioner identifies nothing in the record to disturb that credibility finding. For these reasons, the Court denies habeas relief as to Ground 2.

In sum, the state-court record supports the OCCA's determination that Petitioner's pleas in Case No. CF-2015-5265 were knowing and voluntary. Because Petitioner has not shown either that the OCCA unreasonably applied the law or unreasonably determined the facts in rejecting his due process claims, the Court denies habeas relief as to Grounds 1 and 2.

## II.     Ineffective assistance of counsel (Ground 3)

In Ground 3, Petitioner alleges he was denied his Sixth Amendment right to the effective assistance of counsel (1) when he entered his guilty pleas, (2) when he moved to withdraw the pleas, and (3) when he was sentenced.  Dkt. # 1 at 12-13; Dkt. # 10-4, Pet'r App. Br., at 32-41.  First, he alleges his plea counsel, Benjamin Wass, was ineffective for (1) failing to appropriately explain the consequences of entering a blind plea, (2) allowing Petitioner to plead guilty to an uncharged offense, (3) misadvising Petitioner regarding the sentencing ranges, and (4) misadvising Petitioner regarding the amount of time he would have to serve.  Dkt. # 10-4 at 32.  Next, Petitioner alleges Brian Martin, who represented him during plea withdrawal hearings and sentencing, was ineffective for (1) failing to recognize  Petitioner had been misadvised on the sentencing ranges for each count and (2) failing to object when the state district court sentenced Petitioner after former conviction of two felonies when Petitioner pleaded guilty to only one former felony conviction.  Dkt. # 10-4 at 39-40.

A defendant has a constitutional right to "the effective assistance of competent counsel" during plea and plea withdrawal proceedings.  *Padilla v. Kentucky*, 559 U.S. 356, 364, 373 (2010). To prevail on a claim that he was denied this constitutional right, a defendant must show (1) his counsel's performance was deficient and (2) the deficient performance was prejudicial.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (holding "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel").  To satisfy the first prong of *Strickland*, a defendant must overcome the strong presumption that his counsel acted within the wide range of reasonable professional assistance and show counsel's actions were "completely unreasonable, not merely wrong." *Fields*,

277 F.3d at 1215. As to the second prong, a defendant must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Grant v. Trammell*, 727 F.3d 1006, 1018-19 (10th Cir. 2013). In the context of a guilty plea, a defendant can satisfy the prejudice prong by demonstrating "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. However, a defendant's mere allegation that he would have insisted on gone to trial is insufficient to establish prejudice. *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001). Rather, "to establish prejudice based on counsel's failure to advise his client of certain consequences of a guilty plea, a defendant 'must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Bonney v. Wilson*, 754 F.3d 872, 884 (10th Cir. 2014) (emphasis omitted) (quoting *Padilla*, 559 U.S. at 372).

Without elaboration, the OCCA stated it reviewed Petitioner's claims under *Strickland*'s two-prong test and found no basis for relief. Dkt. # 10-5, OCCA Op., at 4.

When, as here, a state court applies the correct federal law to deny relief, the sole question for a federal habeas court is whether the state court applied the law "in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002); *see also Richter*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."). This is true even when the state court fails to explain its reasons for rejecting a constitutional claim. *Richter*, 562 U.S. at 98; *Lott v. Trammell*, 705 F.3d 1167, 1213 (10th Cir. 2013).

Petitioner's arguments in his state appellate brief and his reply brief demonstrate that his ineffective-assistance-of-counsel claims are simply a repackaging of the same arguments he

presented in support of his due process claims. *See, e.g.*, Dkt. # 10-4, Pet'r App. Br., at 32-42; Dkt. # 16 at 7-9. As previously discussed, the OCCA reasonably rejected those arguments on the basis that Petitioner failed to show, but for the alleged deficiencies in the plea form, he would have changed his decision to plead guilty. Dkt. # 10-5, OCCA Op., at 3 n.2. Reasserting those arguments to attribute those same deficiencies to plea counsel and plea withdrawal counsel does not undermine the OCCA's finding that Petitioner fails to demonstrate prejudice. Thus, Petitioner fails to show the OCCA's rejection of his Sixth Amendment claims was objectively unreasonable. For that reason, the Court agrees with Respondent that § 2254(d) bars habeas relief on Petitioner's ineffective-assistance-of-counsel claims and denies relief on Ground 3.

## CONCLUSION

Based on the foregoing analysis, the Court concludes that Petitioner has not established he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Therefore, the Court denies his petition for writ of habeas corpus. Consequently, the Court declares moot Petitioner's requests for an expedited ruling, an evidentiary hearing, and appointment of counsel.

## Certificate of Appealability

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A district court may issue a certificate of appealability (COA) "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court denies habeas relief by rejecting the merits of petitioner's constitutional claims, the petitioner must make this showing by "demonstrat[ing] that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because reasonable jurists would not debate the correctness of the Court's assessment of Petitioner's claims, the Court denies a certificate of appealability as to all three claims.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.      The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

2.      A certificate of appealability is **denied**.

3.      Petitioner's motion for miscellaneous relief (Dkt. # 19) is **declared moot**.

4.      A separate Judgment shall be entered in this case.

**IT IS FURTHER ORDERED** that the Court Clerk is directed to send a copy of this Opinion and Order to the Tenth Circuit in connection with Tenth Circuit Case No. 18-5081.

**DATED** this 24th day of August 2018.

James H. Payne
United States District Judge
Northern District of Oklahoma